[No. 1,052.]

## THE STATE OF NEVADA, RESPONDENT *v.* THE CONSOLIDATED VIRGINIA MINING COMPANY, APPELLANT.

SPECIAL LAW—SECTIONS 2 AND 4 OF "ACT TO DISCONTINUE LITIGATION" IN CERTAIN TAX SUITS, UNCONSTITUTIONAL.—Sections 2 and 4 of the "act to discontinue litigation touching inequitable claims for taxes and penalties" (Stat. 1879, 143), are unconstitutional, being a special law for the "collection of taxes for state, county, and township purposes" in violation of section 20, art. IV, of the constitution.

GENERAL LAW—ACT PRESCRIBING ADDITIONAL PENALTY IN TAX SUITS—CONSTITUTIONAL.—The "act prescribing an additional penalty for the non-payment of taxes in certain cases after suit" (Stat. 1873, 169), is constitutional, it being a general law imposing the same burdens upon all persons similarly situated and belonging to the same class.

APPEAL from the District Court of the First Judicial District, Storey County.

The facts are stated in the opinion.

*C. J. Hillyer* and *B. C. Whitman*, for Appellant:

I. There is nothing conclusive or even applicable to this appeal in the former decision; as this proceeds upon a different state of facts, and is to be governed by different sections of the statute. There may be dicta in such opinion applicable to the entire statute, but they do not constitute any portion of the law of the case. (*Mulford* v. *Estudillo*, 32 Cal. 138.) The same questions are not presented in the present appeal, as will appear by the record in the former case, so the opinion can not govern this case. (*McKinley* v. *Tuttle*, 42 Cal. 576; *Russell* v. *Harris*, 44 Id. 489.)

II. The rule of law laid down in the former decision as to special and general statutes is all that is claimed here by appellants; the application thereof in the decision is claimed to be illogical; and, as to the other portions, there is every reason why they should be discarded, and that the court will return to the line of decision previously held and laid down in *Youngs* v. *Hall*, 9 Nev. 212; and *Odd Fellows' Bank* v. *Quillen*, 11 Id. 109.

The authorities cited by counsel are reviewed in the opinion.

*Lewis & Deal,* for Respondent, argued that the reasoning of the former decision was applicable to and conclusive upon all questions presented in this case.

*M. A. Murphy,* Attorney General, also for Respondent:

I. The act under consideration is unconstitutional for the following reasons:

1. Because it embraces more than one subject, and the subjects are not expressed in the title. (Sec. 17, art. IV, Const. of Nev.) The acts to be done by section 4 are in nowise suggested, much less stated, in the title to the bill. There is nothing in the title that would operate to warn the mind of a legislator or any one else, that the bill would operate not only to discontinue suits between certain parties in some cases, but would satisfy judgments in other cases and between other parties for less sums than what the judgments call for. Each and every act therein set forth is in direct violation of our unrepealed revenue laws. (Cooley on Const. Lim. 81, 83, 141, 144; Sedgwick, Stat. and Const. L. 517–530; Potter's Dwarris on Stat. 103–107; *People* v. *Mahoney,* 13 Mich. 481; *State* v. *Silver,* 9 Nev. 227; *City of St. Louis* v. *Tiefel,* 42 Mo. 578.)

2. Because the whole act of which section 2 is but a part is invalid, for the reason that it is a special law for the collection of taxes, which is prohibited by section 20 of article IV of our constitution. It is special, because it relates to particular suits only. It has no general application; it is not a rule of conduct or principle for the government of the people; it has no prospective operation; it seeks to affirm certain illegal acts and to take from the court the control of certain suits therein pending. It must be pleaded, and requires evidence to give it application and effect. (*Lewis* v. *Webb,* 3 Greenl. 326; *Picquet, Appellant,* 5 Pick. 64; *Town of Lancaster* v. *Barr,* 25 Wisc. 560; *Griffin* v. *Cunningham,* 20 Gratt. 31.) Taxes are debts recoverable like any similar obligations, and subject to the same conditions, and a law

releasing a person or company from the payment of such debts is unconstitutional and void. (*City of Burlington* v. *B. & M. R. R. Co.*, 41 Iowa, 134; *City of Dubuque* v. *Ill. Central R. R. Co.*, 39 Id. 56; *Wilson* v. *Supervisors*, 47 Cal. 91.)

3. Because it is an attempted interference with the functions of the judiciary, and is therefore in conflict with section 1 of article III of our constitution. (*Guy* v. *Hermance*, 5 Cal. 73; *McClain* v. *Easly*, 4 Baxter, 520; *Wally's Heirs* v. *Kennedy*, 2 Yerger, 554; *Governor* v. *Porter*, 5 Humph. 165; *Merrill* v. *Sherburne*, 1 N. H. 199; *Davis* v. *Trustees*, 21 Wisc. 491; *Staniford* v. *Barry*, 1 Aiken, 314.) The legislature is not authorized to exercise any portion of the judicial power; it can not set aside a judgment or decree, nor can it require the judiciary to give a new hearing once passed upon. (*People* v. *Supervisors*, 26 Mich. 22; *Trustees* v. *Bailey*, 10 Fla. 238; *De Chastellux* v. *Fairchild*, 15 Penn. 18; *Taylor* v. *Place*, 4 R. I. 324; *Denny* v. *Mattoon*, 2 Allen, 361; *State* v. *Fleming*, 7 Humph. 152; *Moser* v. *White*, 29 Mich. 59; *Lewis* v. *Webb*, 3 Greenl. 326; *Lancaster* v. *Barr*, 25 Wisc. 560; *Griffins* v. *Cunningham*, 20 Gratt. 31; *Assessment Board* v. *A. C. R. R. Co.*, 59 Ala. 551; *Kimball* v. *Rosendale*, 42 Wisc. 407; *L. B. & S. A.* v. *Graham*, 7 Neb. 173; *Oliver* v. *McClure*, 28 Ark. 555; *Pryor* v. *Downey*, 50 Cal. 388; Sedgwick on Stat. and Const. Law, 166–170.)

II. Sections 3172 and 3238 of compiled laws are constitutional. The constitutionality of acts imposing penalties have been affirmed by the following decisions: *Scott* v. *Watkins*, 22 Ark. 556; *Craig* v. *Flannagin*, 21 Id. 319; *Pope* v. *Macon*, 23 Id. 644; *Kansas Pacific Railway Co.* v. *Amrine*, 10 Kan. 318; *The C. R. & M. R. R. Co.* v. *Carroll Co.*, 41 Iowa, 189; *Lacey* v. *Davis*, 4 Mich. 157; *Durant* v. *Mayor*, 37 N. J. 271; *Mulligan* v. *Hintrager*, 18 Iowa, 171; *Butler* v. *Bailey*, 2 Bay. 244; *People* v. *Seymour*, 16 Cal. 332; *Drexel & Co.* v. *Commonwealth*, 46 Pa. 31; *Commonwealth* v. *Wyoming Valley C. Co.*, 50 Pa. 410; *Delaware Div. C. Co.* v. *Commonwealth*, 50 Id. 399; *State* v. *Welch*, 28 Mo. 600; *Olds* v. *Commonwealth*, 3 A. K. Marsh. 465.

Neither sections 3172 nor 3238 are retroactive or special; they do not exempt any class of persons or property, but treat all alike.

C. J. Hillyer and B. C. Whitman, for Appellant in reply:

I. Nothing can become "the law of a case" except that which has been adjudicated. The question is not as to the force of a decision as authority, nor as to the force of a series of decisions under the doctrine of stare decisis. It is simply a question of res judicata. The doctrine of the law of the case is nothing else than an application to a second appeal of the doctrine of res judicata. (Sibbald v. The United States, 12 Pet. 488; Washington Bridge Co. v. Stewart, 3 How. 424; Phelan v. San Francisco, 20 Cal. 40; Leese v. Clark, Id. 388.)

II. A decision is the application of a legal principle to a certain state of facts. Under similar but different facts it may be persuasive by analogy, but unless the facts are the same it is no adjudication. (Nieto v. Carpenter, 21 Cal. 488; Mulford v. Estudillo, 32 Id. 135; Lucas v. San Francisco, 28 Id. 591; McKinley v. Tuttle, 42 Id. 576; Russell v. Harris, 44 Id. 489.)

III. The sections under consideration are constitutional. They are a release by the state of a class or classes of demands over which the legislature has full control. The fact that they are retroactive does not affect their validity. (Sedgwick on Const. & Stat. Const. 406–414; Guildford v. Supervisors, 3 Ker. 143.)

IV. It is not a violation of article IV, section 20 of the constitution, because it is not legislation "for the assessment or collection of a tax." A penalty is not a tax nor portion thereof; it is a legislative imposition.

V. All that portion of the brief of the attorney general which treats of the inability of the legislature to exercise judicial functions, or control judicial proceedings, is based upon a misconception of the real force and character of the legislation in question. If this were a law regulating, or attempting to interfere with the methods of judicial procedure between private litigants, the remarks and citations

would be applicable. But the provisions here involved have no such purpose, and consequently can have no such effect. The state of Nevada is the party in interest, and the party litigant. The obligation sought to be affected, and by the sections referred to surrendered, is one due to itself. The law in question deals with the demand, and not with any of the methods of enforcing it. It is an act of grace on the part of the sovereign, announced by its only legitimate agent therefor. Neither the existence nor non-existence of litigation, nor the condition of existing litigation in any way limits or affects the power of the parties thereto to deal with its subject-matter. A release is as effectual after judgment obtained, as before suit begun. The legislature is the sole constitutional agency for creating or discharging state obligations.

VI. A penalty is not a tax, nor any part of a tax. If, because it is collected in the same suit it is a tax, then the costs are taxes. Over the matter of penalties and costs the legislature has utter control within constitutional restrictions as to form of legislation. A legislative release of a tax may violate article X of the constitution, but a release of a penalty or costs, the legislation being otherwise formal, violates neither this nor any other constitutional inhibition of legislative power.

By the Court, LEONARD, C. J.:

On the twenty-seventh of April, 1878, judgment herein was modified in the court below according to a previous order of this court. (13 Nev. 229.)

September 1, 1880, appellants moved the court for an order directing the satisfaction of said judgment on payment of the amount of all taxes and costs included in the same, exclusive of the penalties and percentage, in pursuance of the fourth section of a statute of this state, approved March 17, 1879, entitled, "An act to discontinue litigation touching inequitable claims for taxes and penalties." (Stat. 1879, 144.)

The court denied the motion, and this appeal is taken from an order denying the same.

. The statement on appeal shows that, on the hearing of said motion, it was made to appear to the court that, after the rendition of the original judgment, and in the month of May, 1877, the defendants paid all taxes and costs included therein, but not the penalties for non-payment at the time required by law; and that the amount so paid was duly credited upon the judgment.

It was also shown that no execution was issued upon either the original or modified judgment prior to August 30, 1880. In support of the motion defendants relied upon the fourth section of the statute above referred to, with the conditions of which they had fully complied.

Sections 2, 3, and 4 are as follows:

"Sec. 2. All claims by the state, or by any county, for penalties or percentages, which had accrued previous to the first day of July, 1877, on account of non-payment, at the time required by law, of any previously levied tax, when the original tax and costs were in fact paid prior to said date, are remitted and discharged, and the district attorneys of the several counties are directed to dismiss all actions heretofore commenced for the recovery of such penalties and percentages.

"Sec. 3. Wherein suits commenced for the recovery of taxes delinquent prior to the first day of July, 1877, a judgment has, by the consent of the district attorney, been entered for the amount of the original tax and costs, exclusive of any penalty or percentage due, or claimed by reason of default in payment at the time prescribed by law, the action of the district attorney in so consenting to said judgment is hereby ratified and approved.

"Sec. 4. Wherein actions of the character specified in the two preceding sections, a judgment has been entered for the taxes and also for the penalties or percentages prescribed by law for default in payment, such judgment, if no execution was issued thereon prior to the first day of February, 1877, shall be satisfied and discharged upon payment of the original tax and other costs, exclusive of the amount of the penalties and percentages included therein and still unpaid."

Section 3 has been declared by this court to be in plain and palpable violation of sections 20 and 21 of article IV of the constitution, which declare that "the legislature shall not pass local or special laws in any of the following enumerated cases, that is to say * * *, for the assessment and collection of taxes for state, county, and township purposes." (*State* v. *Cal. Mining Company and the Consolidated Virginia M. Co.*, 15 Nev. 240, 259.)

The validity of sections 2 and 4 was not passed upon directly, in those cases, and it is urged, therefore, that the decisions therein do not become "the law of the case." We shall consider this case upon its merits, and refer to the cases cited as authorities so far as they may be found applicable.

In those cases this court decided that the legislature had no power, under the constitution, to ratify the action of a district attorney in suits commenced for the recovery of taxes delinquent prior to the first day of July, 1877, wherein, by the consent of the district attorney, judgment has been entered for the amount of the original tax and costs, exclusive of any penalty or percentage due or claimed by reason of default in payment at the time prescribed by law; and as before stated, those decisions were made upon the ground that such action by the legislature was in violation of the sections of the constitution before referred to.

In my opinion, if section 3 is unconstitutional for the reason stated, sections 2 and 4 are so, for the same reason. If the legislature, in 1879, could not ratify the prior consent of a district attorney to remit any penalties due previous to July 1, 1877, in consideration of the entry of judgment without objection for the original tax and costs, then it certainly could not remit or discharge such penalties, in cases where no judgment had been taken, or where judgment had been entered for the tax, costs, and penalties; that is to say, if section 3 encounters the constitution for the reason that it is special legislation for the collection of state, county, or township purposes, then sections 2 and 4 must be held invalid for the same reason. The legislative intent was the same in each section, which was to relieve

certain persons from the payment of penalties resulting under the general law, from the non-payment of taxes at the time required, and that was what was done, if they are constitutional. No reason is given by counsel for appellants for holding that the legislature had power, under the constitution, to release and discharge penalties under the circumstances stated in sections 2 and 4, if the same result could not be attained by section 3, and we think none can be given. It follows that, to hold with appellants on this appeal, would involve the necessity of admitting that, upon the former appeal, the court erred in its controlling theory of constitutional construction and in its conclusion.

That case was argued with signal ability, and it received the studious, conscientious consideration of every member of the court. The result was, my brother Hawley concluded that the decision in *Youngs* v. *Hall*, 9 Nev. 212, was applicable to the case then in hand, and considered it to be his duty to follow it, although he dissented when that case was decided, and although he still thought that the conclusion reached in *Youngs* v. *Hall* was wrong; while the other members of the court came to the conclusion announced, and upon the facts presented, did not consider the former case applicable or decisive, even though upon the facts existing in that case, the decision was correct.

*Youngs* v. *Hall* decided that the acts of 1867–1869, to provide for the payment of Esmeralda county indebtedness, were not special laws, for the reason that they operated alike upon all persons similarly situated, whether residing in the county or out of it; that is to say, upon all creditors of the county, and that a law so operating need not apply to all the counties of the state in order to be general. In my opinion, the gist of that decision, instead of being favorable, is fatal to appellant's theory of sections 2 and 4, under consideration. There, all persons similarly situated, that is, all creditors, were treated alike; while here, sections 2 and 4 were so framed that it was not possible for all who might be delinquent at that time, or in the future, to avail themselves of the favor granted to a few. The taxes of a thousand taxpayers of the state might have become

delinquent subsequent·to the first of July, 1877, and they, as well as the penalties, might have been unpaid when the statute was passed, still, not one of them could derive any benefit. And even though the same delinquents had paid their taxes, without the penalties, before the law was passed, yet every one was excluded. It is necessary in the consideration of this case, first, to determine the nature of sections 2 and 4. Are they general or special legislation? Second, Are they legislation for the collection of state, county, or township taxes? What kind of a law, then, did the legislature intend to pass, and what did it succeed in passing? Its title is "An act to discontinue litigation touching *inequitable* claims for taxes and penalties." To say the least, it is hardly probable that the legislature thought *all* claims for penalties were "inequitable." If that had been the legislative idea, the general law imposing them would have been repealed in terms, or the statute would have embraced all, instead of those claims that had accrued prior to July, 1877. There could have been no intention of affecting any claims for penalties that accrued, or might accrue, after the date just mentioned, because the benefits granted were, *ex industria*, limited to claims that had accrued prior to that time; and of them none were included unless the original tax and costs had been in fact paid prior to said date. Out of the whole body of delinquents, then, that existed at the date of the law, a fraction only was chosen as objects of favor. The attempt was to remit all claims for penalties prior to a certain date, regardless of the amount, and to leave those that had accrued subsequently, as well as those that might accrue in the future, to be enforced according to the provisions of the existing law. Except in the cases embraced within the statute the general law was undisturbed, and as to the exceptional cases the intent was to annul the general law.

Does not this law, then, affect only individuals and not a class? Does it not confer special privileges upon one or more persons in nowise distinguished from others of the same category? Who were in the same situation as to claims

for penalties under the general law?  The answer is, all delinquents, or at least all of the same class.   Upon the former appeal in this case the court said, in relation to the general law imposing penalties in cases like this (Comp. L. 3238): "If the legislature had attempted, by a proviso or otherwise, to exempt from its operation any individual or individuals in nowise distinguished from others upon whom it was left operative, either the proviso would have been held void, or the whole law would have been declared unconstitutional." And in *Lewis* v. *Webb*, 3 Greenl. 336, the court said: "Can it be supposed for a moment that if the legislature should pass a general law and add a section by the way of proviso that it never should be construed to have any operation or effect upon the persons, rights, or property of Archelaus Lewis or John Gordon, such a proviso would not receive the sanction or even the countenance of a court of law?   And how does the supposed case differ in principle from the present?   A resolve passed after the general law can produce only the same effect as such proviso.   The case of *Holden* v. *James*, 11 Mass. 396, is a direct authority on this point.   The court there decided that the legislature have no authority, under the constitution, to suspend the operation of a general law."   It is admitted, of course, that in the two cases just referred to the special resolves of the legislature were intended to apply to only one or two persons, and that they were named. But it can not be denied that it makes no difference whether the law is special as to one or one hundred.   It is true, also, that if a few among many in the same situation are named as the objects of peculiar privileges, or as persons upon whom special burdens are imposed, the act of naming is strong proof of the special character of the law. But the naming itself does not make the law special.   It is only proof that it is so, if only a fraction of many in the same situation are named.

Now, why is not this law as certainly special as it would have been if all who are embraced in sections 2 and 4 had been named?   There is no more doubt now than there would have been then, that there was no intention of inter-

fering with the operation of the general law as to any delinquent subsequent to the date named. Between that time and the passage of the law, in March, 1877, and thereafter, all penalties were to be enforced. Suppose our constitution prohibited, in terms, all special legislation as to fixing the period of limitation of actions. Then, as now, the legislature could divide different causes of action into classes, and provide, in one class, say promissory notes, that actions should be brought in six years from maturity, and in another class, say book accounts, in two years. Such legislation would be general and would satisfy the constitution. It could be changed by general law affecting all of a class equally, but any subsequent statute extending or abridging the time as to a part of a whole class would be special. Under the circumstances just stated, a statute enlarging or shortening the time for the commencement of actions upon all promissory notes executed on a certain day, or between certain days, in the past, would be special. It could affect only a few persons of the whole class to which they belong. It might as well mention by name the causes of action intended to be embraced in the law. It is claimed that the statute in question is general, because the legislature had the power to separate taxpayers into classes, and that the persons embraced therein form a class who are all treated alike. The mere remission, by retroactive laws, of penalties due from a fraction of delinquents is, in no just sense, a classification, as that word is used by the courts, such as will justify the distinction here attempted. The only reason why a law for the collection of taxes, which adopts the same methods for all of a class, but different ones for another class, is, or can be, held general, and therefore constitutional, is, because it treats alike all who are in the same situation. This statute does not attempt to do that; but, on the contrary, it in plain terms makes an arbitrary distinction between persons similarly situated.

Besides *Youngs* v. *Hall*, counsel for appellants refer us to several other cases decided by this court, in support of their theory of the nature of this statute.

In *Clarke* v. *Irwin* the court did not say the statute in

question would not have been in violation of the constitutional provision under consideration, if the legislature had attempted to "regulate the election of county and township officers," as those words were, construed by the court. But it was held that, in the act then being considered, there was no such attempt, and consequently that there was no violation of section 20 of article IV. And from the facts before it the court was unable to say that a general law could be made applicable, and therefore that the act violated section 21 of the same article. *Evans* v. *Job*, 8 Nev. 322, followed *Hess* v. *Pegg*, 7 Nev. 29, where the only question was whether the statute locating the county seat of Washoe county at Reno was obnoxious to the twenty-first section of the fourth article of the constitution. It was claimed to be so, for the reason that a general law could have been made applicable. And upon that question the court's conclusion was the same, substantially, as in *Clarke* v. *Irwin*.

In *Ex parte Spinney*, the petitioner's claim of illegal imprisonment was based upon the assertion that the act in question (Stat. 1875, 46), was "a special law in a case where a general law is applicable, contrary to the provisions of section 21 of article IV of the constitution of this state."

It will be seen that in none of the cases above cited, except *Youngs* v. *Hall*, was the question directly considered, whether the statute assailed was a special law embracing any case enumerated in section 20 of article IV, and consequently invalid.

In nearly all of them general and special laws are defined, as they are in other cases, and the definition given of a special law by this court on the former appeal is fully sustained. Indeed, it is conceded to be correct by counsel for appellants. Such a law, then, is "one which affects only individuals and not a class—one which imposes special burdens or confers peculiar privileges upon one or more persons in nowise distinguished from others of the same category." (15 Nev. 249.)

In two cases this court has stated the reasons why section

20, of article IV, was made a part of the constitution. In *Ex parte Spinney*, it is said to have been for " the prevention of unfair discrimination between citizens, and to secure to everyone the enjoyment of the same privileges which are enjoyed by others similarly circumstanced."

In *Evans* v. *Job*, the court said: " Sections 20 and 21 were doubtless incorporated into our state constitution to remedy an evil into which it was supposed the territorial legislature had fallen, in the practice of passing local and special laws for the benefit of individuals, instead of enacting laws of a general nature for the benefit of the public welfare."

Our constitution does not forbid the passage of retroactive laws, like the one in hand, but the fact that they are of that character is often, if not always, strong evidence that they are special and were intended to be so.

To my mind it is plain that if the sections in question can escape being placed among special laws, then, by the use of general words, the legislature may enable one or more delinquents to evade the payment of penalties in the very teeth of a general law imposing them; then one or more persons, by retroactive legislation, may escape the burdens borne, and to be borne, by others in the same situation; then from any class of taxpayers established by general laws, the assessment and collection of whose taxes must be governed by such laws, a new class may be selected for the sole purpose of making them recipients of favors denied to all others. If these things can be, under the constitution, then section 20 is a dead letter.

Before discussing the second question stated above, it is proper to say we concede to the full extent claimed that the state, through its legislature, may do what it will with its own, except when that body is forbidden by the constitution to do anything specified therein; and whatever may be done at all may be accomplished by special or general legislation, except in cases where the former method is prohibited. But the legislature has no power to pass special laws in any of the cases enumerated in section 20 of article IV,

and if it does so, it is the duty of the courts to so declare, however unpleasant the task may be.

We come now to the second question. Are sections 2 and 4 legislation "for the assessment or collection of taxes for state, county, or township purposes?" Counsel for appellants say it is not of that character, "because it is not for the assessment or collection of a tax; that a penalty is not a tax, or a portion of one; it is a legislative imposition."

On the former appeal in this case the court said: "The only question to be decided, therefore, is whether this law is special, and not general; for that it relates to the collection of taxes is not and can not be denied."

In the clause of the constitution, "for the assessment and collection of taxes," etc., it is evident that the word "for" was intended to mean, "with respect to," or "with regard to." Such are the definitions given by lexicographers. This, then, is the constitutional prohibition: "The legislature shall not pass local or special laws * * * with respect to, or with regard to, the assessment and collection of taxes for state, county, and township purposes."

In other words, the property of persons belonging to the same class shall be assessed, and the taxes thereon collected, under the same general laws. Within the restriction just stated it can not be denied that, "the grant of full power to tax carries with it authority to use all means necessary to accomplish the object." (*Slack, Administrator,* v. *Ray,* 26 La. Ann. 675.)

The imposition of penalties for non-payment is one of the means employed by the state in collecting its taxes, and it is legitimate. (*Slack, Administrator,* v. *Ray,* 26 La. Ann. 675.) And in *Morrison* v. *Larkin,* 701 of the same volume, the court say:

"Having power to collect taxes, the state has authority to use whatever means that are necessary to accomplish the object. * * * If there were no damages and no forfeitures, how could the state collect taxes, if from combination among bidders or otherwise, no one would bid for property when offered for sale? Without the fear of penalties and

forfeiture of his land to the state, an obstinate taxpayer might successfully withhold from the state her legitimate revenues." Many reasons may have existed for the imposition of penalties; but, in our opinion, the prominent one was that it would act as a strong incentive to prompt payment of the tax. If a tax is paid within the time allowed, the state is satisfied. It prefers prompt payment without penalty, to an enforced one with penalty; and in order to secure the first it has made provision for the last.

It is true that the statute under consideration was not passed *for the purpose of collecting a tax,* but it is one *with respect to the collection of taxes,* because in certain cases it undertakes to annul the general law, and, if constitutional, does annul the general law by dispensing with one of the principal means adopted thereby, as to all taxpayers, for the collection of taxes.

All laws establishing the means and methods of collection are laws "for the collection of taxes." It follows that such means and methods must be fixed by general law, and they can not be materially changed except by general law, embracing at least an entire class. The legislature can not, by special law, interrupt the operation of a general law providing for the assessment or collection of taxes.

Otherwise the constitutional provision would be useless. If a general law for the collection of taxes can be set aside, annulled, suspended, or repealed by a special law in a given case, all the evils incident to special legislation are liable to result at any time. If it can be done in one case, so it may in many cases, or all, and thus the subject that the constitution declares shall be governed by general laws may be controlled by special statutes. Our statutes imposing penalties for non-payment at the times required, are enactments for the collection of taxes, and they would have been unconstitutional if they had not been made general. A statute remitting penalties in certain cases, but not in all, is legislation with respect to the collection of taxes. It curtails the means and interferes with the methods adopted by the general law. Such a law is, "with respect to the col-

lection of taxes," as surely as one dispensing with suits for their collection would be.

In *Ex parte Pritz,* 9 Iowa, 30, the petitioner was arrested under a warrant-issued by the police magistrate of the city of Davenport, for the violation of a city ordinance. The office of police magistrate was created by an act of the general assembly, prior to the adoption of the constitution in force in 1858, which prohibited the passage of local or special laws  *  *  * "for the incorporation of cities and towns." Subsequent to the adoption of the constitution, an act was passed by the legislature amendatory of the original act incorporating the city of Davenport, and by the fourth section thereof the office of police magistrate was abolished.

It was claimed by the prosecution that the amendatory act above mentioned was void, because such legislation was prohibited by the constitution, and, consequently, that the office of police magistrate was not abolished. By the defense it was contended that the prohibition against passing laws for the *incorporation* of cities and towns did not take away the power to *amend* an act of incorporation in existence before the adoption of the constitution.

We quote from the opinion: "It is claimed that the prohibition to pass laws for the *incorporation* of cities and towns does not take away the power to pass laws for the amendment of such laws.  *  *  * In the interpretation of the constitution, as in the interpretation of laws, however, we are to ascertain the meaning by getting at the intention of those making the instrument. What thought was in the mind of those making the constitution—what was their intention, is the great leading rule of construction.

Let us see, then, what was the intention in incorporating sec. 30 of art. 3 into the constitution. The ready and obvious answer is, to prevent special or local legislation; to require that the legislature should pass general laws upon all subjects named, and in all other cases where such general laws could be made applicable. There can be no question but that it was designed to confine the legislature to

general legislation, and leave the people in their municipal capacity to organize, and carry on, their government under such general laws.   If this be so, then to say that the legislature may not pass a law to *incorporate* a city, but may to amend an act of incorporation in existence before the adoption of the constitution, or charters formed under the general law, would make this provision of the constitution, practically, amount to nothing.   For, if they may amend, they may to the extent of passing an entire new law, except as to one section.   Or they may, at one session, amend half the law, and at the next, the other half, and thus the plain and positive prohibition of the fundamental law would be evaded. By such a construction the evil sought to be remedied would continue, if possible, in a more objectionable form.   \* \* \* But, again, to say that the prohibition to pass laws for the incorporation of a city does not include a prohibition to *amend*, we think is narrowing the language used to an unwarranted extent.   When we speak of an act or law to incorporate a city, it may be conceded that we are understood to refer to a law *creating* the corporation.   But if a law is passed that changes or modifies the act creating such law, it is as much for the government of the corporation as was the original act; and it would certainly seem that, if the legislature can not create, neither can they legislate so as to change that which was previously properly created."   So we say in this case; if the legislature had not power to pass special laws with respect to the collection of taxes, then it could not, by such laws, legislate so as to change those general laws which were previously properly enacted.   In other words, when a general law is passed which provides the ways and means for the collection of taxes, the complete operation of that law can not be materially interrupted, except by the enactment of a general law upon the subject, and until such a law is passed the original act remains in full force and must be carried out, regardless of any special law.   (See *Atchison* v. *Bartholow*, 4 Kan. 124; *Davis* v. *Woolnough*, 9 Iowa, 106.)

But it is said that if the sections under consideration are unconstitutional, then section 3238, Comp. L., imposing the

penalty here sought, is equally so. We agree with counsel for appellants that the last-named section is constitutional. It is a general law imposing the same burdens upon all persons similarly situated, and belonging to the same class. The legislature had the power, by general law, to impose a heavier penalty upon one class than upon another, if, in their judgment, there was good reason for so doing. The legislature is the judge of the means necessary for an efficient system of collection, and within reasonable limits, at least, its discretion may be exercised by general legislation.

If we correctly interpret the argument of counsel for appellant, it is that section 3238 is constitutional for the reasons given above, and that the sections under consideration are so for the same reasons. That is to say, by these sections the legislature made a new class, consisting of the persons embraced therein. This argument has already been answered. If it could be held that these persons constitute a class, still it would be true that they were made such by special law enacted for the sole purpose, and as a means, of nullifying, in part, the intended operation of the general law. The purpose must fail, because the means, being prohibited, are inadequate.

The order of the court below is affirmed.

BELKNAP, J., having been of counsel at a former trial in the court below, did not participate in the foregoing decision.

*C. J. Hillyer & B. C. Whitman,* for Appellants.

