[No. 1,094.]

## THOMAS NASH AND MARY A. KENNEDY, APPELLANTS, *v.* JOHN MULDOON, DEFENDANT, LLOYD HILL ET AL. RESPONDENTS.

TRANSFER OF BIDS—EXECUTION SALE—MONEY RECEIVED BY SHERIFF IN HIS OFFICIAL CAPACITY.—N. and K., as judgment creditors, purchased at sheriff's sale under execution certain cord-wood. No money was paid, each creditor intending that his bid should be credited upon his execution. The sheriff demanded money for his fees, and also for the purpose of paying preferred labor liens upon the property. The creditors, at his suggestion, disposed of their interests to M., and M. thereafter paid the money to the sheriff, who neglected and refused to pay the same, or any part thereof, to the judgment creditors. Evidence relating to this transaction reviewed: *Held,* that the disposal of the interests of the judgment creditors to M. was a transfer of the bids, instead of a sale of the property, and that the sheriff received the money in his official capacity.

LABOR LIENS—COMMENCEMENT OF ACTION—NOTICE.—The sheriff is not justified in paying labor liens before the commencement of an action to enforce them, after notice that the liens are disputed, or when the parties in interest had no notice of the claim of the laborers.

SHERIFF'S EXPENSES IN TAKING CHARGE OF PERSONAL PROPERTY—CERTIFICATE OF DISTRICT JUDGE.—The sheriff is not authorized to withhold money for his expenses incurred in preserving personal property, levied upon, unless his charges have been certified to by the district judge as just and reasonable.

REFUSAL OF SHERIFF TO PAY MONEY—SECTION 10 OF "ACT RELATING TO
SHERIFFS" (STAT. 1861, 104) CONSTRUED—PENALTIES.—The penalties
imposed by section 10 of the "act relating to sheriffs" was intended as a
punishment for intentional wrongdoing, and are not to be enforced in
cases of mistakes, or errors of judgment, made by the officer in good faith.

IDEM—LIABILITY OF SHERIFF AND HIS SURETIES.—The sheriff and his sure-
ties are liable for all moneys received by him in his official capacity,
which he neglects or refuses to pay over, on demand, and for the penal-
alties imposed by the statute when he does not act in good faith.

IDEM—PAYMENT OF MONEY AFTER RETURN DAY OF EXECUTION.—The sheriff
and his sureties are liable for all moneys collected by him from the sale
of property levied upon before the return day of the writ of execution,
notwithstanding intermediate the levy and sale, or payment of the
money, the writ may have become *functus officio.*

IDEM—RETURN TO WRIT—NOT NECESSARY TO AUTHORIZE PROCEEDINGS
UNDER THE STATUTE.—The return of the sheriff admitting the receipt of
the money is not a condition precedent to the institution of proceedings
under the provisions of the statute. The receipt of the money may be
established by other evidence.

APPEAL from the District Court of the Second Judicial
District, Ormsby County.

The facts appear in the opinion.

*A. C. Ellis* and *W. H. Dickson,* for appellants:

I. The "act relating to sheriffs" (Stat. 1861, 104, sec.
10), is constitutional. It is clearly within the scope of the
powers of the legislature to prescribe this practice and pro-
ceeding, both as to sheriff and sureties. (*Buckmaster* v.
*Drake,* 5 Gil. 321; *Lewis* v. *Garrett,* 5 How. (Miss.) 434;
*Lewis* v. *Fellows,* 6 Id. 261; *Earl* v. *Smith,* 26 Tex. 522;
*Bell* v. *Thorpe,* 44 Ga. 509; *Milor* v. *Farrelly,* 25 Ark. 353;
*Little* v. *Guest,* 30 Tex. 1; *Hall* v. *Commonwealth,* 8 Bush,
378; *Wright* v. *McKenney,* 34 Tex. 568; *Russell* v. *Rolfe,* 50
Ala. 56; *Supervisors* v. *Dunn,* 27 Gratt. 608; *Scogins* v.
*Perry,* 46 Tex. 111; *Brown* v. *Commonwealth,* 6 J. J. Marsh.
636; *Koppikus* v. *Cap. Com.,* 16 Cal. 248; Proffat on Jury
Trial, sec. 8; *Lake* v. *Tolles,* 8 Nev. 285.)

II. There was no proof which established or tended to
establish the validity of any of the so-called labor liens.
(*Coscia* v. *Kyle,* 15 Nev. 395.)

III. We deny the validity of the disbursement for alleged
advertising, keeper's fees, feeding team, and provisions for

keeper, because the court from which the several writs of attachment and executions were issued did not certify that the same was just and reasonable, as required by law. (*Geil* v. *Stevens*, 48 Cal. 590; *Lane* v. *McElhany*, 49 Id. 421.)

IV. The pleadings and all the testimony show that proper levy of the executions was made, and a sale of the property had before the return day. This shows that the sheriff received the money officially. Even if the levy were made before the actual sale, and the return day intervenes, still he must sell, and the money received from such sale is received officially, and the sureties are liable. (*Evans* v. *Governor*, 18 Ala. 659; *Dennis* v. *Chapman*, 19 Id. 29.)

V. If the money came into the hands of Hill by color of his office, he received it by virtue of his office. And if the parties understood he received it officially it binds the sureties, whether it was received before or after the return-day. As to any distinction between *colore officii* and *virtute officii*. (*Van Pelt* v. *Littler*, 14 Cal. 194; *N. H. S. B.* v. *Varnum*, 1 Metc. 34; *Evans* v. *Governor*, 18 Ala. 659; *Dennis* v. *Chapman*, 19 Id. 29; *Lucas* v. *Locke*, 11 West Va. 81; *Knowlton* v. *Bartlett*, 1 Pick. 271; *McNeary* v. *Marshall*, 7 Humph. 229; *Beale* v. *Commonwealth*, 7 Watts, 183; *Ohio* v. *Sureties Alden*, 12 Ohio, 59; *State Bank* v. *Twitty*, 2 Hawks, N. C., 5.) There can not be any dispute that all the parties understood and treated this money as received officially.

VI. The transfer of the bids of Kennedy and Nash, and the acceptance and recognition of such transfer, binds sheriff and sureties, and this is a proper proceeding. (*Carter* v. *Spencer*, 7 Ired. 14.)

VII. The sheriff wrongfully and willfully withheld this money. He paid the claims of McRae and McLellan, aggregating three hundred and thirty-six dollars, against the protest of petitioners, for which there can be no excuse in fact or in law. We are, therefore, entitled to recover the one thousand nine hundred and eleven dollars, and all the penalties of the statute, and in addition five hundred and eighty-nine dollars and forty cents which he has paid out for illegal labor claims and unauthenticated charges, the respective penalties of ten per cent. per month interest to

commence after the established dates of the demands, and after the receipt of the money.

VIII. The law is not construed as strictly in favor of sureties on official bonds as ordinary sureties. (12 Ohio, 59; 7 Watts, 183.)

*Trenmor Coffin, T. D. Edwards, and C. N. Harris*, for Respondents:

I. There was no transfer of bids by petitioners, but simply a sale by them of the wood sold at sheriff's sale.

II. If the transactions can be construed into anything else than a sale of the wood, then it must be an attempt on the part of petitioners to control the official action of the sheriff, and having been acted upon by the sheriff, was such an interference and such an unauthorized dealing between the execution creditors and the sheriff as will release the sheriff's bondsmen of all liability as to the results of such unauthorized dealing. (Brandt on Suretyship, secs. 451, 457; *Wells* v. *Gant*, 4 Yerg. 491; *Waters* v. *Carroll*, 9 Id. 102; *Webb* v. *Ansbach*, 3 Ohio St. 522; *People* v. *Pennock*, 60 N. Y. 421; *State* v. *White*, 10 Rich. S. C., 442; *Nolley* v. *Callaway Co.*, 11 Mo. 447; *Carey* v. *State*, 34 Ind. 105; *Scott* v. *State*, 46 Id. 203; *Wilson* v. *Broder*, 10 Cal. 486.)

III. There is nothing in the transcript to show that the two thousand and nine dollars ever came into the sheriff's hands either under color of his office or by virtue of his office. Whatever acts he performed, were simply in the capacity of agent for petitioners. It is an admitted fact that nine hundred and nine dollars of the two thousand and nine dollars came into the hands of Lloyd Hill, the sheriff, long after the return day of the execution. For this amount the sheriff's bondsmen can not be held liable upon any theory of law, as he had no authority to receive the money, and could not receive it officially. (*Thomas* v. *Brawder*, 33 Tex. 783; *Forward* v. *Marsh*, 18 Ala. 645; *Hill* v. *Kemble*, 9 Cal. 71; *Barton* v. *Lockhart*, 2 S. & P., Ala., 109.)

IV. The petitioners in this proceeding have mistaken their remedy; the action should have been for a failure to return. The statute penalties against sheriffs for non-pay-

ment of moneys collected on execution, are only recoverable when the sheriff by his return admits the collection of the money but refuses to pay it over. (Authorities cited in opinion.)

V. It does not appear from the record that any portion of the money received by the sheriff, officially or otherwise, before the return day of the execution, remains in the hands of the sheriff. The utmost that can be claimed is that it has been misapplied. To such a case the statute under which this proceeding is had, does not apply. (*Giffin* v. *Smith*, 2 Nev. 374.)

By the Court, BELKNAP, J.

The plaintiffs having severally obtained judgments against the defendant, thereafter moved in the court below to recover from the sheriff and his sureties the moneys collected under executions issued upon said judgments, together with the penalties imposed by the law for delinquency in such cases. The statute upon the subject reads as follows: "If a sheriff shall neglect or refuse to pay over on demand to the person entitled, any money which may come into his hands by virtue of his office, after deducting his legal fees, the amount thereof, with twenty-five per cent. damages, and interest at the rate of ten per cent. per month from the time of the demand, may be recovered by such person from him and the sureties on his official bond, on application, upon five days' notice to the court in which the action is brought, or the judge thereof in vacation." (Sec. 2961, Comp. L.) The motions were consolidated for the purpose of trial. Judgments were rendered in favor of defendants. It was proven that on the twenty-first day of November, 1879, plaintiffs, Nash and Kennedy, recovered judgments against defendant Muldoon, aggregating the sum of two thousand six hundred and fifty-three dollars and fifty cents. On the fourth day of December following the sheriff sold certain wagons, animals, and hay, under writs of execution issued upon these judgments, and upon said sale received the sum of five hundred and twenty-seven dollars    Afterward, and on the twelfth day of June, 1880, under alias ex-

ecutions issued in each case on the second day of June, the sheriff sold a quantity of cordwood, and received therefor the sum of two thousand and nine dollars. Thus, upon the two sales the sheriff received the sum of two thousand five hundred and thirty-six dollars.

It was proven that he had discharged preferred labor liens upon the property to the amount of two hundred and eighty-six dollars and ninety cents, for which he was entitled to credit, and that he was entitled to retain the sum of four hundred and twelve dollars and fifty-five cents, for his fees, commissions, and other expenses. Deducting the aggregate of these amounts, to wit, six hundred and ninety-nine dollars and forty-five cents, from the total amount received, the balance, one thousand eight hundred and thirty-six dollars and fifty-five cents, is the principal sum plaintiffs were entitled to recover.

The sheriff has offered sufficient reasons for failing to pay five hundred and thirty-six dollars and eighty-eight cents of this sum to excuse himself and sureties to this extent from the penalties imposed by the statute; forty-eight dollars and fifty cents of the five hundred and thirty-six dollars and eighty-eight cents is charged by the sheriff as expenses attending the keeping and sale of the property. These items are objected to for the reason that they were not approved by the certificate of the district judge as required by the statute. The law fixes the fees of the sheriff, and also allows him "such further compensation for his trouble and expense in taking possession of property under attachment or execution, or other process, and of preserving the same, as the court from which the writ or order may issue shall certify to be just and reasonable." (Stats. 1875, 148.)

The sheriff also paid the preferred labor liens of McRae for one hundred and fifty-six dollars, of McLennan for one hundred and eighty dollars, of Armstrong for forty-one dollars, and of Burgeoin for one hundred and eleven dollars and thirty-eight cents. The plaintiffs disputed the lien claims of McRae and McLennan; and notified the sheriff not to pay either of them. Nevertheless he did pay them,

notwithstanding no action was commenced to enforce them. Neither of the plaintiffs nor their attorney had any notice of the lien claims of Armstrong or Burgeoin, nor was any action brought to establish either of them. The sheriff clearly erred in paying the liens of McRae and McLennan, nor was he warranted in paying those of Armstrong or Burgeoin. (*Coscia* v. *Kyle,* 15 Nev. 395.) Nor was he entitled to deduct from the moneys due the judgment creditors the expenses incurred in preserving the property levied upon, except such matters as may have been certified by the district judge as having been just and reasonable. (*Geil* v. *Stevens,* 48 Cal. 590; *Lane* v. *McElhany,* 49 Id. 421.)

The payment of the lien claims and the withholding of the charge of forty-eight dollars and fifty cents appear to have been errors of judgment rather than willful or corrupt acts upon the part of the officer, and as the penalties provided by the statute were intended as punishment for intentional wrongdoing, and not for mistakes made in good faith, we are of opinion that whilst plaintiffs are entitled to recover these items no penalty should be imposed for the delinquency. At the sale which took place on the twelfth day of June, the judgment creditors severally purchased cordwood. No money was paid by either of them on account of such purchase, each creditor apparently intending that his bid should be credited upon his execution. The sheriff, however, needed money, not only for his own fees and disbursements, but to discharge labor liens upon the property.

Accordingly he and his deputy demanded payment of money for these purposes, and they suggested that plaintiffs transfer their bids. Negotiations were entered into between the plaintiffs and one Freeman McComber, in which the sheriff and his deputy took an active part. The result of their negotiations is claimed by respondents to have been a sale of the wood by plaintiffs to McComber, whilst appellants claim that it was simply a transfer of their respective bids made at the execution sale.

The distinction to be made is important in view of the payments made by McComber to the sheriff. If it was a sale, respondents claim that the sheriff received the money

as the agent of plaintiffs and not in his official capacity, and the sureties on his official bond are not liable. But we are of the opinion that the view of the appellants upon this question is correct, and that the transaction was a transfer of bids. The testimony of every witness who was interrogated relative to this transaction goes to establish the fact that it was a transfer of bids rather than a sale from plaintiffs to McComber.

Elstner, the deputy sheriff, who had previously told plaintiffs that they must " either pay, sell the wood, or transfer the bids," testified that afterwards McComber came into the sheriff's office and said that the bids had been transferred, and requested him to do the writing, and thereupon he drew the writings which it is claimed show the transaction to have been a sale. The following day McComber paid the sheriff the sum of one thousand one hundred dollars, and the sheriff requested Elstner to write a receipt for the full amount on the " Kennedy and Nash executions." The writing is as follows:

" I have this fifteenth day of June, 1880, by the order of Thomas Nash and Mary A. Kennedy, gave the possession of the wood at the ranch known as John Muldoon's wood ranch to Freeman McComber, and they, the said Kennedy and Nash, transferring their bid and all rights thereto, and directing me as above to do.          " LLOYD HILL, Sheriff.

" Per M. R. ELSTNER, Deputy Sheriff."

" Received June 16, 1880, of Freeman McComber, on the above wood, one thousand one hundred dollars. The number of cords estimated in the wood in question above is seven hundred and seventy-seven cords. The remainder of money to be paid to me as soon as the correct number of cords is ascertained.          LLOYD HILL, Sheriff.

" Per M. R. ELSTNER, Deputy Sheriff."

Further on Elstner says: " I always understood that the money paid by McComber was paid on these Nash and Kennedy executions, and I so treated it." McComber paid Hill, sheriff, on wood sold on these executions, two thousand and nine dollars in all, and it so appears in the sheriff's docket which I have before me."

The testimony of Nash, Kennedy, and McComber is all to the effect that the transaction was a transfer of bids. McComber says: "The sheriff and the parties interested thought it would save expense if I would step into their shoes and take their bids," instead of having the property resold by the sheriff.

Not only does the testimony of all the witnesses show the transaction to have been intended as a transfer of bids, but the parties so treated it. If the sheriff had considered the transaction a sale he would naturally have credited the executions with the bids made by the plaintiffs; but instead of this, he credited the executions with the payments made by McComber, and so made the entry in his docket.

Until the agreement between McComber and the plaintiffs was reached the sheriff was constantly and earnestly urging a transfer of the bids to some person with funds, to the end that by such an arrangement money would be paid into his hands, to be by him applied to the settlement of the liens, fees, and costs. With this end in view he naturally would not have permitted any sale and delivery of the property by the plaintiffs, for such a proceeding might have defeated his purpose to raise money for the payment of the liens. It is improbable that he would have surrendered the possession of property sold under execution, for which he had received no money, and the proceeds of which sale were subject to the payment of these claims.

Every act of the sheriff is inconsistent with respondents' theory. He received the money paid in by McComber officially, and applied it in part to the payment of the labor liens against the property. If he had received this money unofficially and as plaintiffs' agent, he would not have so treated it.

The writing heretofore mentioned as having been drawn by Mr. Elstner, at the instance of McComber, is as follows: "Lloyd Hill, sheriff: I have, this fifteenth day of June, 1880, sold and transferred all our right, title, and interest to the wood purchased of you at sheriff's sale by me on the twelfth day of June, 1880, at the ranch on the road leading from Carson City to Lake Bigler, and said ranch is known

as the ranch of John Muldoon, to Freeman McComber, who will pay for the same; and the possession of the wood upon our bid is hereby ordered to be given to the said Freeman McComber.                    THOMAS NASH.

"Witness: E. R. Elrod."

The same notice *mutatis mutandis* was given in the Kennedy case.

These instruments simply recite that the right, title, and interest of the judgment creditors had been sold and transferred.   Their "right, title, and interest" was nothing more than an accepted bid.   Neither was the owner of the wood, nor could become such until the payment of his bid to the sheriff, nor does the writing purport to recite that the wood itself had been sold.   The remaining portion of the document is somewhat ambiguous, but we think it makes the delivery of the wood subject to the payment of the bids to the sheriff.   This is the construction it should have received in the light of the oral testimony, and this is the construction the sheriff placed upon it in acting thereunder.   Having so treated it he can not now be allowed to justify his delinquency upon the ground that it was an unconditional order.

It is also urged in support of the ruling of the court that of the two thousand and nine dollars paid by McComber, nine hundred and nine dollars came into the hands of the sheriff after the return day of the execution, and that at least for this last named sum the bondsmen can not be holden.

Upon this point the general doctrine is invoked, that the sureties upon the official bond of a sheriff are not liable for money paid to him upon an execution after the day upon which it should have been returned.   The reason of this doctrine is said to be that since the sheriff has received the money unofficially he must be proceeded against as any other individual who has received money for the use of another.

But whilst it has been held that a sheriff *eo nominie* is liable for moneys collected by him during the existence of the writ only, it is settled law that he and his sureties are chargeable with moneys collected from the sale of property

levied upon before the return day of the writ, notwithstanding intermediate the levy and sale or payment of the money the writ may have become *functus officio.*

In *Evans et al.* v. *The Governor,* 18 Ala. 663, the court said: "It is well settled that if a sheriff levy on personal property, while the execution is in full force, he may proceed and sell it after the return day of said writ. He acquires by his levy a special property in it, of which he is authorized by law to divest himself by sale. * * * Having the right to sell the property, it would be absurd to say he had no right to receive the money. * * * But for the levy, it is very clear the plaintiff had no right to receive the money after the return day of the execution, and his sureties in such case would not be chargeable for it." (*Rudd et al.* v. *Johnson,* 5 Litt., Ky., 20; *Dennis* v. *Chapman,* 19 Ala. 29; *Beale* v. *Commonwealth,* 7 Watts, 183; *Hamilton* v. *Ward,* 4 Tex. 356.)

The cord-wood having been levied upon and sold prior to the return day of the execution, the respondents are liable for the moneys collected, upon the authorities cited, and the doctrine invoked in their behalf is inapplicable to the facts of this case. No return was made by the sheriff of the executions upon which the money was collected. It is contended that the penalties provided by the statute are recoverable only when the sheriff by his return admits the collection of the money and refuses to pay it over. To sustain this view the following authorities are cited: *Egery* v. *Buchanan,* 5 Cal. 53; *Johnson* v. *Gorham,* 6 Id. 195; *Wilson* v. *Broder,* 10 Id. 486.

The case of *Wilson* v. *Broder* has no bearing upon the point. In the other cases language supporting respondents' view is employed, but an examination of these cases will show that the point in question was in nowise involved in the decision of either of them. In *Egery* v. *Buchanan* the writ had been returned by the officer, and the decision turned upon the question whether his return was traversable in a proceeding by motion under the statute.

The report of the case of *Johnson* v. *Gorham* does not state whether a return to the execution was made, but the

motion was defended upon the ground that the sheriff was unable to determine the conflicting claims to the proceeds of the sale, and he, therefore, asked the advice of the court upon the subject.

No reason has been given, and we think it may confidently be said none exists, for requiring the return of the officer admitting the receipt of the money a condition precedent to the institution of proceedings of this nature. The sugges- tion is pertinently answered by counsel for appellants, in saying: "Such a construction does violence to the plain letter of the statute, and simply enables a corrupt officer to embezzle moneys or to refuse to pay them over upon re- quest, and to escape all penalty by simply supplementing one offense by another, of failing, as in this case, to make any return."

The evidence adduced at the hearing established the re- ceipt of the money by the sheriff quite as satisfactorily as a return to the execution could have done. Having reached the conclusion that the several positions taken in support of the ruling of the district court are untenable and that the judgment must be reversed, it remains to inquire whether the record discloses error as to defendants Kitz- meyer, Circe, and Rosser. These defendants, who were sureties upon the sheriff's bond, were released therefrom during the month of March, 1880, and before the issuance of the execution under which the two thousand and nine dollars were collected.

Whilst they were sureties only five hundred and twenty- seven dollars were collected, and of this amount four hundred and thirty-nine dollars and fifteen cents were ac- counted for, leaving a balance unaccounted for of eighty- seven dollars and eighty-eight cents, as appears from the testimony in chief of Mr. Elstner, the deputy sheriff. But the sum of four hundred and thirty-nine dollars and fifteen cents does not embrace all of the charges which the sheriff was entitled to deduct from the total amount collected. It was subsequently proven that the fees, commissions, ex- penses, etc., of the sheriff in these cases, exclusive of the four hundred and thirty-nine dollars and fifteen cents, amounted

to the sum of four hundred and twelve dollars and fifty-five cents, and of this sum it was not shown how much was incurred whilst the defendants last named were holden upon the bond. *Non constat* that eighty-seven dollars and eighty-five cents of these costs were not incurred prior to the discharge of these three defendants as sureties. At all events, as the sum of four hundred and twelve dollars and fifty-five cents could have been deducted from the amount collected by the sheriff, appellants should have affirmatively shown the am'ount chargeable whilst the defendants named were sureties.

Having failed to show this fact, we can not say that the court erred in rendering judgment in their favor.

It is ordered that the judgment be reversed as to all of the defendants, except Kitzmeyer, Circe, and Rosser, and that, as to these defendants, the judgment be affirmed.