[No. 1101.]

## M. W. ESSER, APPELLANT, v. A. H. SPAULDING ET AL., RESPONDENTS.

SALARY LAW—CONSTITUTIONAL—DOES NOT IMPAIR CONTRACTS.—The "salary law" (Stat. 1879, 133) authorizing the county commissioners to transfer money from the general fund to the salary fund of the county is not in violation of the constitutional provision against impairing the obligation of contracts.

CERTIFICATES OF INDEBTEDNESS ON GENERAL FUND—CONTRACTS.—The certificates of indebtedness issued by the county auditor for allowances on the general fund of the county do not create a contract to pay the same out of the general fund in the order of presentment out of the first money in, or to come into, the treasury and apportioned to that fund.

IDEM.—The only contract created by the certificate of indebtedness is that they shall be paid out of the general fund in the order of presentation or allowance.

OBLIGATION OF CONTRACTS.—PUBLIC RIGHTS.—The constitutional prohibition
against the passage of laws that impair the obligation of contracts has no
application where the statute in question is a public law relative to a public
subject within the domain of the general legislative power of the state, and
involving the public rights and public welfare of the entire community
affected by it.

IDEM—VESTED RIGHTS.—No right can be considered a vested right unless it is
something more than a mere expectation based upon an anticipated con-
tinuance of the present general laws; it must have become a title, legal or
equitable, to the present or future enforcement of a demand, or a legal
exemption from a demand, made by another.

IDEM—CERTIFICATES ON GENERAL FUND.—No ordinary creditor of a county
acquires any vested right to its revenue until the money is actually in the
treasury, and if a law is passed before the money comes into the treasury
which makes other disposition of a part of a certain fund, the holders of
certificates on that fund acquire no vested right to such money until the
provisions of the last law have been complied with.

SALARY LAW—CONSTITUTIONAL—EMBRACES BUT ONE SUBJECT.—Section 23 of
the salary law is not in conflict with section 17, article IV., of the constitu-
tion. The law embraces but one subject and matter properly connected
therewith, and the subject is briefly expressed in the title.

IDEM—GENERAL LAW.—The salary act is a general law which has uniform
operation throughout the state.

IDEM—RETROSPECTIVE LAWS.—The constitution of this state does not forbid the
passing of retrospective laws, and the inhibition contained in the constitu-
tion of the United States against any *ex post facto* law does not embrace
civil laws of this character.

IDEM—NOT REPUGNANT TO OTHER ACTS.—Section 23 of the salary act is not
repugnant to the act authorizing county commissioners to loan or transfer
surplus money from one fund to another. (Stat. 1881, 32.) There is no
conflict between these acts.

APPEAL from the District Court of the Fifth Judicial Dis-
trict, Nye County.

The facts are stated in the opinion.

*Curler & Bowler,* for Appellant:

I. The usual ingredients of a contract are: a consideration,
parties and a subject matter. What is called the obligation
of a contract is a duty which the law imposes upon a party
not to disturb any of the legal rights conferred upon the other
party. The extent of the rights of one party, therefore, is
the measure of the obligation of the other. In this case there
was a full and ample consideration; not a consideration im-
plied, but expressly stated—that of jury fees and of sheriff's
fees. The parties to the contract were the plaintiff and his

predecessors in interest, in their individual capacity on the
one side, and the county, in its sovereign character, on the
other.   In making this contract it acted in its sovereign char-
acter.   It had no other ability in which it could act.   It
meant to bind itself in its sovereign capacity, for there was
none other which it could bind.   If, therefore, the county, by
the various laws of this state, was a party to the contract, it
intended to bind its law-making power.   The law presumes
that a party understands the legal effect, which was in this
case, to bind the parties to all its stipulations.   It therefore
results from the fact that the certificates of indebtedness is a
contract.   Rights and obligations are correlative terms.   The
extent of the rights of one party is the exact measure of the
obligation of the other.   The obligation of a contract is the
duty of performance according to its terms, the remedy or
means of enforcement being part of the obligation, which the
states cannot by legislation impair.   The municipal law enters
into and forms a part of this obligation, and to that the con-
tracting parties must be considered as referring, in order to
enforce performance.   The obligation of a contract includes
everything within its obligatory scope.

II. The obligation of the contract, if it means anything,
means that the county will pay, in the order of allowance, out
of the first money apportioned into the general fund.   It pos-
itively denotes a priority of payment to that of subsequent
allowances, or to the salaries of county officers, contracted in
the year A. D. 1881.

III. The appellant has a vested right in the general fund.
The auditing and issuing of the certificates of indebtedness on
said fund is conclusive of such right.   (*Onondaga County* v.
*Briggs*, 2 Den. 26; *People* v. *Stout*, 23 Barb. 349; *People* v.
*Fitzgerald*, 54 How. Pr. 1; *Bank* v. *Shaber*, 55 Cal. 327.)

IV. Section 23 of the salary law, or so much thereof as
authorizes the county commissioners to transfer moneys from
the general fund into the salary fund, is therefore unconstitu-
tional and void, because it impairs the obligation of contracts
and conflicts with the federal constitution.   (Art. I., sec.
10; also, Nev. Const., art. I, sec. 15.)   Appellant's right
exists upon a solemn compact on the part of the state (2

Comp. L., 2992) with persons to whom the indebtedness accrued and their successors in interest. When entered into the same became a contract. On the pretext that the statute should be executed in good faith our services were rendered, and two-thirds of the county revenue (2 Comp. L., 3100) are apportioned into the general fund. It is so apportioned and placed in said fund because "it can only be applied to the payment of warrants drawn on that particular fund." (*Flack* v. *Com. Washoe Co.*, 1 Nev. 460; 2 Comp. L., 2988.) After two-thirds of the revenues pledged to the redemption of demands against the general fund, it is sought by section 23 of the act of 1879 to remit thereof sufficient to make up the deficiency in the salary fund, to be applied to the payment of allowances contracted and audited, long time subsequent to the claims of appellant. The auditing and allowing of said claims, the subsequent issuance of the certificates of indebtedness as alleged in the complaint, constitute a contract, which both federal and state constitutions protect by saying that "no law shall ever be passed impairing it." The issuance of the "scrip" results in a promise to pay, implied if not expressed, which could not be affected by subsequent legislation. The holders of general fund "scrip," issued prior to the passage of the "salary law," entitled the holder thereof to a property in said fund, which is made taxable or subject to taxation. It is a claim on that fund to the extent of the amount of the "scrip" held by him at that time. Under and by virtue of said "scrip" the appellant acquired such a species of interest in the general fund as would entitle him to interfere to save the moneys of said fund from any improper distribution, or from being disbursed contrary to the provisions of his contract. (*Webster* v. *Fish*, 5 Nev. 192; *Laforge* v. *Magee*, 6 Cal. 650; *McDonald* v. *Griswold*, 4 Id. 352; *Dewey* v. *Lambier*, 7 Id. 347; *Robinson* v. *Magee*, 9 Id. 81; *People* v. *Bond*, 10 Id. 563; *People* v. *Tillinghast*, 10 Id. 584.)

V. The certificates of indebtedness held and owned by appellant were made payable "in the order of its allowance," (2 Comp. L., 2993, 3078) out of said general fund, which fund was created, set apart and dedicated to the payment of said allowances in general, with those of a similar character,

and as a fund for the gradual or total redemption of the indebtedness existing against that particular fund.   Under these assurances, and with a security pledged for the ultimate payment of appellant's claim in general, with others against the general fund (Stat. 1864–5, 376), the holders of general fund scrip entered into and accepted the contract proposed by the legislature (2 Comp. L., 2993), and received such scrip or bills of exchange, under the pretext on the part of the government that the fund to be raised was to be applied to the payment of said certificates as they should become due.   That was the inducements held out by the sovereignty to the creditors of the county, and they cannot be heard to in any manner impair its obligation.   (*Billings* v. *Hall*, 7 Cal. 1; *McDonald* v. *Maddux*, 11 Id. 187; *Thornton* v. *Hooper*, 14 Id. 8; *McCauley* v. *Brooks*, 16 Id. 11; *People* v. *Seymour*, 16 Id. 345; *McDonald* v. *Bird*, 18 Id. 195; *English* v. *Supervisors*, 19 Id. 184; *Rose* v. *Estudillo*, 39 Id. 270; *Floyd* v. *Blanding*, 54 Id. 45; *Dash* v. *Vankleeck*, 5 Am. Dec. 291; *King* v. *Dedham Bank*, 8 Am. Dec. 112; *Society* v. *Wheeler*, 2 Gall. 134; *Lewis* v. *Brackenridge*, 1 Black. 220; *Bell* v. *Perkins*, 14 Am. Dec. 745; *Turnpike Co.* v. *Parks*, 27 Id. 704; *McKinlay* v. *Cordoza*, 2 Am. Rep. 275; *People* v. *Supervisors*, 4 Barb. 74; *Benson* v. *The Mayor*, 10 Id. 224; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Green* v. *Biddle*, 8 Wheat. 84; *Marbury* v. *Madison*, 1 Cr. 175; *Fletcher* v. *Peck*, 6 Id. 87; *Prov. Bank* v. *Billings*, 4 Pet. 514; *Bronson* v. *Kinzie*, 1 How. 311; *McCracken* v. *Haywood*, 2 How. 608; *Edwards* v. *Kearzey*, 96 U. S. 596; *State Bank* v. *Knoop*, 16 How. 376; *New Jersey* v. *Wilson*, 7 Cranch 164; *People* v. *Platt*, 17 John. 208; *Osborne* v. *Humphrey*, 7 Conn. 335.)

VI. Any law which enlarges, abridges or in any manner changes the intention of the parties, resulting from the stipulations in the contract, necessarily impairs it.   (*Ogden* v. *Saunders.* 12 Wheat. 256; *Green* v. *Biddle*, 8 Id. 84; *Sturges* v. *Crowningshield*, 4 Id. 197; *Golden* v. *Prince.* 3 Wash. C. C. Rep. 319.)

VII. The very title of the salary act is in conflict with art. IV., sec. 17, Nev. Const.   It embraces more than one subject, and the subjects are not expressed in the title, which are as

follows:   Section 18 ,provides for "extra help;" sections 20,
22 define the duties of the several county officers named in
the act; section 21 provides a penalty for neglect of duty;
section 23 authorizes the county commissioners in the several
counties to transfer moneys from the salary fund into the gen-
eral fund, and *vice versa*; section 24 provides for revenue
allowances by the state.   All of which is not expressed in the
title or in anywise referred thereto.   (Pot. Dwar. on Stat.,
103, 107; Cooley's Const. Lim., 144, 146, 172, 487; Dillon on
Mun. Corp., sec. 28; *State* v. *Silver*, 9 Nev. 227; *State* v.
*Rogers*, 10 Id. 250; *Mosier* v. *Hilton*, 15 Barb. 657; *Sharp*
v. *New York*, 31 Id. 572; *People* v. *Lawrence*, 36 Id. 177;
*People* v. *Commissioners*, 53 Id. 70; *Tecumseh* v. *Phillips*,
5 Neb. 305; *Muendorf* v. *Duryea*, 25 Am. Rep. 235; *Gid-
dings* v. *San Antonio*, 26 Am. Rep. 322; *Hadden* v. *Col-
lector*, 5 Wall. 107; *Reed* v. *State*, 12 Ind. 641; *Chiles* v.
*Drake*, 2 Met., Ky., 146; *Morrison* v. *Springer*, 15 Iowa
304; *Adams* v. *Howe*, 14 Mass. 340.)

VIII. It is a special law in violation of art. IV., secs. 20
and 21, of the Nev. Const.   (*State* v. *Cal. M. Co.*, 15 Nev.
254; *Holden* v. *James' Adm'r.*, 11 Mass. 404.)   It mani-
festly appears that the legislature intended to control the gen-
eral fund for the benefit of the officers' salary, hence is special.

IX. The act of 1879, section 23, is retrospective and void,
because it refers to the general fund without any limitation.
(Story on Const. of Stat., sec. 1393; *Goshen* v. *Stonington*,
10 Am. Dec. 121; 1 Kent Com. 455; 1 McLean, 40.)

X. Section 12 of salary act is repugnant to the act author-
izing commissioners "to loan or transfer surplus money from
one fund to the other."   (Stat. 1881, 32.)   It seems by the
current of decisions that where a subsequent act is repugnant
to a prior one, the last operates.   (Sedg. on Const. St. and
Const. Law, 124; *Merrill* v. *Gorham*, 6 Cal. 41; *Pierpont*
v. *Crouch*, 10 Id. 316; *Matter of Estate of Wixom*, 35 Id.
320.)

*J. I. Griffith* and *C. J. Lansing*, for Respondent:

I. The salary law is constitutional.   It does not impair the
obligation of any contract.   Many things done by a 'state,

through its legislature, may seem to hold out promises to individuals which cannot. be treated as contracts without hampering the legislative power of the state in a manner that would leave it without the means. of performing its essential functions.    Such laws cannot be regarded as contracts between the state and the citizen of the. state who expects to be benefited by their passage.    One legislature cannot, by ordinary legislation, bind or control, in any manner, subsequent legislatures. It is not every declaration of the will of the sovereign that constitutes a contract with the individual citizen. · A general statute should not be construed to be a contract, when it was obviously designed as the expression of the legislative will, for the time being, in a matter of municipal regulation.    Laws passed in the exercise of the ordinary legislative power of a state are not contracts within the purview of the constitution; and laws which amend or repeal them, or impair their efficacy, do not fall within the constitutional inhibition.    A county government is a portion of the state government, and the county debt, created by authority of law, is a part of the public state debt.    A statute may, therefore, change the time and mode of paying the county debt, and seriously impair, or even destroy, its value.    An indebtedness or claim against a state is not a legal obligation in favor of the individual, and can be enforced only by permission of the state.    It is a moral obligation in favor of the individual who holds it against the state; and the individual must rely upon the good faith of the state to discharge such obligation in the mode and at the time the sovereign power may dictate.    (*State Bank* v. *Knoop*, 16 How. 369; *Ohio Trust Co.* v. *Debolt*, 16 How. 416; *Corning* v. *Greene*, 23 Barb. 33; *People* v. *Roper*, 35 N. Y. 629; *State* v. *Dews*, R. M. Charl. 397; *Sharp* v. *Contra Costa Co.*, 34 Cal. 285; *Hünsaker* v. *Borden*, 5 Cal. 288; *Gilman* v. *Contra Costa Co.*, 8 Cal. 52; 3 Cooley Const. Lim. 275; *Thornton* v. *Hooper*, 14 Cal. 9; *Beers* v. *State*, 20 How. 527; *Bank* v. *State*, 20 How. 530; *Platenius* v. *State*, 17 Ark. 518.)

II. Citizens have no *vested right* in the existing general laws of the state which can preclude their amendment or repeal.    There is no implied promise on the part of the state to protect its citizens against incidental injury occasioned by

changes of the law.  A mere expectation of property in the future is not a vested right.  No one has a vested right to be protected against consequential injuries arising from a proper exercise of rights by others.  The state may, for the time being, and perhaps permanently, destroy the value to the owner of his property.  (*Merrill* v. *Sherburne,* 1 N. H. 213; *Branson* v. *Philadelphia,* 47 Penn. St. 329; *Wilkinson* v. *Cheatham,* 43 Geo. 258; *Goshen* v. *Richmond,* 4 Allen, 460; *Bridgewater* v. *Plymouth,* 97 Mass. 390; Cooley Const. Lim. 284, 358, 359, 383, 208; *Rich* v. *Flanders,* 39 N. H. 304.) The auditing and allowing of a claim against a county gives the holder no lien upon or right to any money in the treasury, or which may come into it; and the certificate of indebtedness certainly can confer no greater right, for it is nothing more than evidence of what the auditor and commissioners did at the time of auditing and allowing, as before stated.  It is the order or warrant of the auditor that gives such right.  (*Humboldt Co.* v. *Commissioners of Churchill Co.,* 6 Nev. 37.)

III.  Any legislative act which does not encroach upon the powers apportioned to the other departments of government, being *prima facie* valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the constitution, and the case shown to come within them.  The courts are not at liberty to declare statutes void because of their apparent injustice, inexpediency or impolicy; neither are the courts at liberty to declare an act a nullity because it is opposed to a spirit supposed to pervade the constitution.  Courts will not declare a statute void, unless the nullity of the act is placed in their judgment beyond a reasonable doubt.  Such reasonable doubt must be solved in favor of the legislative action, and the act be sustained.  (*Sill* v. *Corning,* 15 N. Y. 303; *Bennett* v. *Boggs,* Bald. 73; *Norwich* v. *Commissioners,* 13 Pick. 60; *Beauchamp* v. *State,* 6 Blackf. 305; *Newland* v. *Marsh,* 19 Ill. 376; *Myers* v. *English,* 9 Cal. 341; *License Tax Cases,* 5 Wall. 469; *Wheeler* v. *Wall,* 6 Allen, 558; *People* v. *Fisher,* 24 Wend. 220.)

IV.  The sections of the act objected to are not in conflict with article IV., section 17, Nevada constitution.  Each of said sections refer to a subject germain to the matter expressed

in the title, and is properly connected therewith.  (*Ash* v. *Parkinson,* 5 Nev. 35; *State* v. *Silver,* 9 Nev. 231.)   The details of a statute should not be specifically stated in the title. (*Clinton* v. *Draper,* 14 Ind. 295; *Duncombe* v. *Prindle,* 12 Iowa, 1; *Wheeler* v. *State,* 23 Geo. 9; Cooley Const. Lim., 143–146; *People* v. *Briggs,* 50 N. Y. 566; *Commonwealth* v. *Clapp,* 5 Gray, 100.)   To the extent of the collision and repugnancy, the law must yield to the constitution; and to that extent and no further is it rendered by such repugnancy inoperative and void.   (*Norris* v. *Boston,* 4 Met. 288; *State* v. *Eastabrook,* 3 Nev. 173; *Robinson* v. *Bidwell,* 22 Cal. 379.)

V.  The act is not a special law.   It does not come within any of the cases enumerated in section 20 of article IV. of Nevada constitution, which imposes restriction on legislation. It is a general law, as heretofore claimed, and has uniform operation throughout the state.   The act, in fact, is in strict obedience to that provision of the constitution which directs the legislature to fix by law the duties and compensation of county officers.   (Sec. 32, art. IV. Const.)

VI.  Section 23 is in no sense retrospective.   Appellant has no contract or vested right that has been affected, changed or interfered with by the passage of the law.   Said section is not in derogation of article I., or either of sections 1–8 or 20 of Nevada constitution, because appellant has not been deprived of any property, been injured, nor despoiled of any unalienable right, nor has any right been impaired of the rights retained by the people.

By the Court, LEONARD, J.:

This appeal is from an order of the court below, denying appellant's application for an injunction and dissolving the restraining order made at a prior date, enjoining and restraining respondents from transferring money from the general fund into the salary fund of Nye county.

Appellant is a citizen and taxpayer of Nye county.   He is the holder and owner of certain certificates of "Nye county indebtedness," issued to him and his assignors for jurors' and

sheriff's fees, dated April, 1878. Following is the form of the certificates:

"I, James A. Service, county recorder and ex-officio auditor, in and for said county and state, do hereby certify that M. W. Esser has due him from said county of Nye, in the said state of Nevada, the sum of  *  *  *  dollars  *  *  * for jurors' fees of sundry persons, November term, 1877, allowed February 15, 1878, on general fund, being allowances No. 2954, 2980, 2981 and 2987. And I further certify that the above named amount will be paid in the order of its allowance to said M. W. Esser, upon the surrender of this certificate, or to his order, properly indorsed herein. Witness my hand and official seal, this twenty-third day of April, 1878.

"[SEAL.]            JAMES A. SERVICE,
            "County Recorder and ex-officio Auditor."

Respondents are the county commissioners, county recorder and ex-officio auditor, and county treasurer. On the first day of January, 1881, and at the time this action commenced (August, 1881), there was an indebtedness against the general fund of about thirty thousand dollars, consisting in part of plaintiff's claims above mentioned. On the eleventh day of March, 1879, the legislature passed what is called the "salary law" of the various county officers in the several counties of the state, the twenty-third section of which provides that "whenever there is a surplus in said (salary) fund the board of county commissioners may transfer it to the general fund; and whenever there is a deficiency the board of county commissioners shall transfer to the salary fund a sufficient sum from the general fund to meet all warrants drawn against said salary fund." (Stat. 1879, 133.) Under this statute, the officers mentioned therein did not receive salaries until the first Monday in January, 1881.

On the sixth day of April, 1881, the board of county commissioners ordered that the auditor be authorized " to transfer from the general fund to the salary fund all moneys coming into the general fund, as the same are paid into said general fund, for the purpose of liquidating any deficiency in said salary fund for the quarter ending March 31, 1881, until such

deficiency is liquidated." And on the sixth day of July, 1881, a similar order was made to cover any deficiency to that date. In pursuance of orders made between April 6 and August 15, 1881, the auditor' and treasurer transferred to the salary fund from the general fund two thousand six hundred and forty-three dollars, which was all the money apportioned, paid in and belonging to the general fund during that time, and that entire sum was paid out by the treasurer upon warrants drawn on the salary fund.

It is admitted that the auditor and treasurer, upon proper orders so to do, will continue to transfer and pay out from moneys that may come into the general fund amounts sufficient to satisfy any deficiency that may exist in the salary fund, and that the commissioners will make such orders if they are not enjoined from so doing.

Plaintiff alleges that by reason of the transfer of moneys apportioned and belonging to the general fund the value of the allowances on the same is depreciated and its security diminished; that by reason of the indebtedness due and payable from the general fund there is no surplus money in said fund, nor can there be until plaintiff's indebtedness is paid.

There are other allegations in the complaint, which we deem it unnecessary to mention. A preliminary injunction, with an order to defendants to show cause why it should not be continued, was issued by the court. The several defendants set up the salary law before mentioned in justification of their acts, and thereupon the order appealed from was made by the court.

In the argument of this case counsel for appellant, in their briefs, cited many cases in support of the propositions that, under the constitution of the United States, states are prohibited from passing any law impairing the obligation of contracts; that an existing law enters into and forms a part of a contract made; that vested rights cannot be disturbed by subsequent legislation. Those decisions are undoubtedly good law, and establish the general propositions stated. But we do not think they are applicable to this case.

Briefly stated, it is urged on behalf of appellant that the certificates of indebtedness issued by the auditor under the

statute (C. L., 2993), together with the statute itself, and the one providing that "county orders shall be redeemed by the treasurer according to the priority of presentment (C. L., 2988), and all other statutes regulating the time and manner of payment, and affecting the value, of indebtedness against the general fund, in force at the date of the certificates set out in the complaint, constituted a contract, by which it was agreed to pay the same out of the general fund, in the order of presentment or allowance, and out of the first moneys in, or to come into, the treasury and apportioned to that fund; and that thereafter appellant had a vested right in that fund and the moneys therein and to come in, under the laws then in force, which cannot be affected by subsequent legislation detrimental to him, without impairing the obligation of contracts, which is prohibited by the constitution of the United States.

It is incumbent upon appellant, before he can invoke this constitutional prohibition, to show the existence of such a contract as the framers of the constitution intended to protect against hostile legislation by the several states; and then he must show that the salary law does, in fact, impair the obligation of such contract.

We do not think he has shown either.

It is not, nor can it be, contended that there is anything in the certificates themselves which even suggests the idea that the county agreed, or intended to agree, that the same amount of its revenue should continue to go into, and remain in, the general fund; or that the statutes regulating that matter should not be changed. Nor is it claimed that in the laws then in force such a contract is expressed. If it exists at all, it is because such a contract is necessarily implied.

The rules of interpretation touching contracts, like the one here claimed, are well settled and stated in *Newton* v. *Commissioners*, 10 Otto 561.

* * * "' But the contract must be shown to exist. There is no presumption in its favor. Every reasonable doubt should be resolved against it. Where it exists it is to be rigidly scrutinized, and never permitted to extend either in scope or duration beyond what the terms of the concession clearly

require.' (*Tucker* v. *Ferguson*, 22 Wall. 527.)    There must have been a deliberate intention, clearly manifested, on the part of the state to grant what is claimed.    Such a purpose cannot be inferred from equivocal language."

In 1785 the legislature of Massachusetts passed " an act for incorporating certain persons for the purpose of building a bridge over Charles river, between Boston and Charlestown, and supporting the same during forty years."    In 1792 the charter was extended to seventy years.

The law provided that the company should pay two hundred pounds annually to Harvard college, which was done, and all other duties imposed by the charter were performed by the corporation.    In 1828 the legislature incorporated a company, by the name of " The Proprietors of the Warren Bridge," for the purpose of erecting another bridge over Charles river.

In *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 427, it was claimed, among other things, that the act for the erection of Warren bridge impaired the obligation of the contract between the state of Massachusetts and the proprietors of Charles river bridge.

The court said (p. 547): " The continued existence of a government would be of no great value if, by implications and presumptions, it was disarmed of the powers necessary to accomplish the ends of its creation.    *   *   *    The rule of construction announced by the court (4 Pet. 514) was not confined to the taxing power; nor is it so limited in the opinion delivered.    On the contrary, it was distinctly placed on the ground that the interests of the community were concerned in preserving undiminished the power then in question; and whenever any power of the state is said to be surrendered or diminished, whether it be the taxing power or any other affecting the public interest, the same principle applies, and the rule of construction must be the same."    *   *   *

"Adopting the rule of construction above stated as the settled one, we proceed to apply it to the charter of 1785—to the proprietors of the Charles river bridge.    *   *   *    It confers on them the ordinary faculties of a corporation, for the purpose of building the bridge, and establishes certain rates of toll, which the company are authorized to take.    This is

the whole grant. There is no exclusive privilege given to them over the waters of Charles river, above or below the bridge; no right to erect another bridge themselves, nor to prevent other persons from erecting one; no engagement from the state that another shall not be erected, and no undertaking not to sanction competition nor to make improvements that may diminish the amount of the income. Upon all these subjects the charter is silent. * * * No words are used from which an intention to grant any of these rights can be inferred. If the plaintiff is entitled to them, it must be implied simply from the nature of the grant, and cannot be inferred from the words by which the grant is made." And it was held that the rules of construction in such cases forbade the implication claimed.

In that case it was urged that the obligation of the contract was impaired, because the building of a new bridge diminished the amount the Charles River Bridge Company would otherwise have received, while, under the contract, they were entitled to receive tolls from the entire travel; that by the charter there was an absolute, unconditional grant of all the tolls, which a subsequent legislature could not impair.

In this case the claim is that the revenue laws in force at the date of the certificates became a part of the contract; that the obligation of that contract was impaired by the twenty-third section of the salary law, because it diminished the amount of money in the general fund, while by the prior laws, and consequently by the contract, there was an absolute pledge and grant to the holders of certificates on that fund that the same percentage of the entire revenue should continue to go into, and remain in, that fund until all the certificates outstanding against it should be paid.

In other words, the claim is that the legislature and the county contracted not to do that of which appellant complains, and that the state relinquished its right to control its revenues according to its necessities.

The legislature possesses the entire control and management of the financial affairs of the state. (*Sangamon Co.* v. *City of Springfield*, 73 Ill. 66; *People Ex. Rel. City of Springfield* v. *Power*, 25 Ill. 191; *McCauley* v. *Brooks*, 16 Cal. 34.)

In the last case, referring to *McDonald* v. *Maddux*, 11 Cal. 187, the court said: "By the act of 1854, to fund the floating debt of the county, it was made unlawful to redeem any warrants of the county drawn for indebtedness arising prior to May, 1854, except with funds then on hand, or which might be received after that date, properly belonging to the previous revenue of the county. The legislature, in this particular, only directed the application of future revenues of the county to certain purposes, and in that respect only exercised an acknowledged constitutional power. By the mandamus the appellant sought to subject to the payment of his warrants of 1853 funds collected in 1856, which belonged to the revenue of the county of the latter year, and this the court held he could not do under the prohibition contained in the funding act, and observed that there could be no serious question of the power of the legislature to direct in what manner the debts of the county shall be paid, or its funds disbursed, subject to certain well known restrictions." (And see *Youngs* v. *Hall*, 9 Nev. 224.)

The power of the legislature to control the revenues of the state has not been relinquished in this case.

But if we admit there was a contract, what was its extent? Only that certificates against the general fund should be paid out of that fund in the order of presentation or allowance.

The salary law does not impair the obligation of that contract, even though it exists, unless it is impaired by the passage of a general law, the effect of which is merely to postpone payment. The contract to pay out of the fund stated in the certificates has not been changed or impaired. It is still incumbent on the county to pay out of the general fund and in the order of presentment or allowance.

The language of the court in *Charles River Bridge Company* v. *Warren Bridge, supra,* is especially applicable here: "None of the faculties or franchises granted to that corporation have been revoked by the legislature, and its right to take the tolls granted by the charter remains unaltered. In short, all the franchises and rights of property enumerated in the charter, and there mentioned to have been granted to it, remain unimpaired. But its income is destroyed by the War-

ren bridge, which, being free, draws off the passengers and property which would have gone over it, and renders their franchise of no value. This is the gist of the complaint, for it is not pretended that the erection of the Warren bridge would have done them any injury, or in any degree affected their right of property if it had not diminished the amount of their tolls. In order, then, to entitle them to relief, it is necessary to show that the legislature contracted not to do the act of which they complain, and that they impaired, or, in other words, violated that contract by the erection of the Warren bridge." (See, also, *Newton* v. *Commissioners, supra; Harris* v. *Shaw,* 13 Ill. 463; *Elwell* v. *Tucker,* 1 Blackf. 285; *Armstrong* v. *Board of Com.,* 4 Blackf. 209; *Adams* v. *The Co. of Logan,* 11 Ill. 339.)

So, in this case, it is at least necessary for appellant to show that the legislature, by the laws in force at the date of these certificates, contracted not to do what was done by the twenty-third section of the salary law; that is, authorize county commissioners to transfer money thereafter collected from the general fund to the salary fund, should any deficiency exist in the latter fund, or what is the same thing, pass a law, the effect of which is, in a certain contingency, to put less money in the general fund than would have gone into it under the former law.

And again, it is well settled that the constitutional prohibition against the passage of laws that impair the obligation of contracts "has no application where the statute in question is a public law relative to a public subject within the domain of the general legislative power of the state, and involving the public rights and public welfare of the entire community affected by it."

"The framers of the constitution did not intend to restrain the states in the regulation of their civil institutions adopted for internal government. * * * The provision of the constitution never has been understood to embrace other contracts than those which respect property or some object of value, and confer rights which may be asserted in a court of justice." (*Dartmouth College Case,* 4 Wheat.; *Newton* v. *Commissioners, supra.*) And in *East Hartford* v. *The*

*Hartford Bridge Co.*, it is said: "The parties to this grant did not by their charter stand in the attitude towards each other of making a contract by it, such as is contemplated in the constitution, and so could not be modified by subsequent legislation.

The legislature was acting here on the one part, and public municipal corporations on the other. They were acting, too, in relation to a public object. * * * From this standing and relation of these parties, and from the subject matter of their action, we think that the doings of the legislature as to this ferry must be considered rather as public laws than as contracts. They related to public interests. They changed as those interests demanded. The grantees, likewise the towns, being mere organizations for public purposes, were liable to have ther public powers, rights and duties modified or abolished at any moment by the legislature. * * * It is hardly possible to conceive the grounds on which a different result could be vindicated without destroying all legislative sovereignty, and checking most legislative improvements and amendments, as well as over its subordinate public bodies." Section twenty-three of the salary law does not impair the obligation of contracts.

We now come to the question of vested rights. In *Humboldt County* v. *The County Commissioners of Churchill County*, this court said: "The legislature undoubtedly has the power to direct that certain claims against the county shall have a preference over all others which are not so situated as to give the holder a vested right to money in, or to come into, the treasury, at the time of the legislative action." (6 Nev. 38.)

What are vested rights? In *State Bank* v. *Knoop*, 16 How. 408, Mr. Justice Campbell says: "A captor may be deprived of his share of prize money, pensioners of their promised bounty, at any time before their payment. * * * Salaries may be reduced; offices having a definite tenure, though filled, may be abolished" (except so far as restrained by the state constitution, 10 Otto 559); "faculties may be withdrawn, the inducements to invest capital impaired and

defeated without impairing constitutional obligation. \* \* \* The multifarious interests of a civilized state must be continually subject to the legislative control. General regulations, affecting the public order or extending to administrative arrangements of the state, must overrule individual hopes and calculations, though they may have originated in its legislation. It is only when rights have vested under laws that the citizen can claim a protection to them as property. Rights do not vest until all the conditions of the law have been fulfilled with exactitude during its continuance, or a direct engagement has been made limiting legislative power over and producing an obligation. \* \* \* A plain distinction exists between the statutes which create hopes, expectations, faculties, conditions, and those which form contracts."

In his Const. Lim., 445, Judge Cooley says: "It would seem that a right cannot be considered a vested right, unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable, to the present or future enforcement of a demand, or a legal exemption from a demand made by another."

The legislature of 1879 had an undoubted right and power to direct the application of the future revenues of the several counties, unless deprived of that power by contract.

If plaintiff has vested rights, they cannot extend beyond the contract made by the certificates and the statutes in force at their date; and as to those rights, if such there are, he can claim protection in this action so far only as they are affected by the twenty-third section of the salary law.

Should it be admitted then, that the right to be paid out of the general fund in the order of presentment or allowance, was a vested right that could not be taken away by subsequent legislation, that fact would not entitle appellant to relief, because the right to be so paid has not been disturbed.

It may be, and probably is, true that the payment of his certificates has been delayed by the salary law, and that he has received consequential injury thereby. But against such injuries, arising from a proper exercise of public powers, the law does not protect him. (Cooley's Const. Lim. 481.) And

see note, page 482, where, in referring to the Charles River Bridge case, *supra*, it is said: ''The necessary effect would be to decrease greatly the value of the first franchise, if not to render it altogether worthless. But the first charter was not exclusive in its terms; no contract was violated in granting the second; the resulting injury was incidental to the exercise of an undoubted right by the state, and as all the vested rights of the first corporation still remained, though reduced in value by the new grant, the case was one of damage without legal injury.''

The same is true here, and this fact renders it unnecessary to discuss the question at greater length, except to state that no ordinary creditor of a county acquires any vested right to its revenues, until the money is actually in the treasury. It follows, if a law is passed, as in this case, before money comes into the treasury, which makes other disposition of a part of a certain fund, that the holders of certificates on that fund can acquire no vested right to such moneys, until the provisions of the last law shall have been complied with.

We do not deny that, if a state enters into a contract which it has power to make as was the case in *McCauley* v. *Brooks*, *supra*, and *Louisiana* v. *New Orleans*, 12 Otto, 204, it cannot impair its obligation by subsequent legislation. The rule in such a case is the same as with an individual. But, in ascertaining the terms of a contract affecting the public, nothing can be presumed against the state, and, except as it is plainly bound, the legislative power is unlimited within the restrictions of the state constitution. There is a wide distinction between the certificates in question and court-house and railroad bonds referred to by counsel for appellant. In one case there is no covenant that the laws then existing shall not be changed, or that the same amount of money shall continue to go into the general fund, or remain therein, if the necessities of the state shall require a modification of its financial policy. There is no contract that has been violated.

In the other cases there are legislative contracts pledging payment, interest and principal, within stated periods, and making it the duty of the county commissioners to levy a yearly tax until full payment, and place the proceeds thereof in a separate fund.

The language used by courts in the last class of cases is referred to in support of appellant's position here. The facts being dissimilar, the language and reasoning are inapplicable.

If the theory of appellant is correct, then the legislature had not power to change any law that was in force at the date of these certificates, the effect of which would be to reduce the general fund; and all the redemption laws of the state, including that of Nye county, are unconstitutional.

At the date of the certificates seventy-five per cent. of the revenues were required to be placed in the general fund. Carrying out appellant's theory, it would follow, and in fact it is so claimed to be, that no less than that percentage can be allowed to go into that fund, so long as there are certificates outstanding against it which were issued while the requirement above mentioned was in force.

Suppose at the date of the certificates, officers had been paid a salary, and it had been the law that, in addition to the seventy-five per cent. of the revenues before mentioned, all fees of officers should be placed in the general fund; that the fees were exorbitant, and the welfare of the state demanded a change. If this theory is correct those fees would have to remain until the whole indebtedness against that fund should be paid, because the indirect effect of a change would be to delay payment, and thus impair the obligation of the contract, and the result would be to perpetuate legislative errors, or compel the continuance of laws demanded under certain circumstances, but detrimental under others. Such a claim is not supported by the law.

The salary law does not interfere with any of plaintiff's vested rights, and he is presumed to have taken the certificates with the knowledge that the legislature had the power to change the law in any respect, if, in so doing, they did not impair the obligation of any contract or interfere with vested rights.

Section 23 of the salary law is not in conflict with section 17, art. IV. of the constitution of this state. The law embraces but one subject and matter properly connected therewith, and the subject is briefly expressed in the title. (*Humboldt Co.* v. *Commissioners of Churchill Co.*, *supra; Youngs* v. *Hall*, *supra*, and *State* v. *Ah Sam*, 15 Nev. 30.)

It is a general law which has uniform operation throughout the state, and was enacted in obedience to the mandate contained in section 32, art. IV.   (*Youngs* v. *Hall, supra; State* v. *California M. Co.*, 15 Nev. 254; *State* v. *Con. V. M. Co.*, 16 Nev. 438.)

Our constitution does not forbid the passage of retrospective laws, whether the salary law is of that character or not (*State* v. *Con. V. M. Co.*, 16 Nev. 404), and the inhibition contained in the constitution of the United States against the passage of any *ex post facto* law does not embrace civil laws like this.   (Cooley's Const. Lim. 324.)

The objection that section 23 takes money belonging to plaintiff and other creditors without "due process of law," has been sufficiently answered in the preceding discussion.

The last objection is that "section 23 is repugnant to an act entitled ' an act to authorize the county commissioners in the several counties in this state to loan or transfer surplus money from one fund to another' " (Stat. 1881, p. 32), and that the last act repeals section 23 of the former.

The object in passing the last named statute was to permit a *temporary* use of surplus money in any fund, in payment of indebtedness against another fund.   But any money so used must be paid back.   Section 23 of the salary law requires a *permanent* transfer from the general fund to the salary fund, to the extent of any deficiency in the latter.   Both laws may be enforced.   There is no conflict between them.

Our conclusion is the same in relation to the "act concerning the allowance and payment of demands," etc.   (Stat. 1881, p. 25.)

The order appealed from is affirmed.